DOWNEY BRAND LLP
ANTHONY L. VIGNOLO (Bar No. 203933)
JENNIFER L. WILLIAMS (Bar No. 261037)
KARINA R. STANHOPE (Bar No. 307147)
621 Capitol Mall, 18th Floor
Sacramento, CA  95814-4731
Telephone: 916.444.1000
Facsimile: 916.444.2100
avignolo@downeybrand.com
jwilliams@downeybrand.com
kstanhope@downeybrand.com

Attorneys for Plaintiff
STILLPATH RETREAT CENTER LLC

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

SAN FRANCISCO DIVISION

| | |
|---|---|
| STILLPATH RETREAT CENTER LLC,<br><br>Plaintiff,<br><br>and<br><br>AMERICAN ADDICTION CENTERS, INC.,<br><br>Plaintiff-Intervenor,<br><br>v.<br><br>COUNTY OF SAN MATEO,<br><br>Defendant. | Case No.  3:15-cv-01386-MMC<br><br>**REQUEST FOR JUDICIAL NOTICE IN SUPPORT OF PLAINTIFF'S MOTION FOR PARTIAL SUMMARY JUDGMENT**<br><br>Date:       February 17, 2017<br>Time:       9:00 a.m.<br>Dept.:      7<br>Judge:      Honorable Maxine Chesney<br><br>Trial:       April 10, 2017<br>Filed:       March 25, 2015 |

Plaintiff Stillpath Retreat Center LLC ("Stillpath"), pursuant to Federal Rule of Evidence 201, hereby requests that the Court take judicial notice of the following:

1.      A grand jury investigated the San Mateo County's election system and issued a written report stating that the County "is the only county in California to have countywide elections to elect its Board of Supervisors," and recommended that the County switch to the "more representative" district election system, as reflected in the Letter from the 2008-2009 San

1

1
2
3

Mateo County Civil Grand Jury to the San Mateo County Board of Supervisors President, dated June 30, 2009 [Depo. Exhibit 87], a true and correct copy of which is attached hereto as **Exhibit A**.

4
5
6
7

      2.      A lawsuit was filed against San Mateo County in 2011 alleging voter's rights discrimination, as reflected in the Complaint for Violation of the California Voting Rights Act of 2001, dated April 14, 2011 [Depo. Exh. 89], a true and correct copy of which is attached hereto as **Exhibit B**.

8
9
10
11
12
13

      3.      The San Mateo County Board of Supervisors considered and affirmed an amendment to the Conditional Use Permit (CUP) for Skylonda Lodge, as well as a resource management permit and exemption from architectural review, to increase lodging to 32 rooms, expand the septic system and drainfield, and expand the parking lot to 30 spaces, as reflected in the Board Meeting Agenda, dated April 27, 1999 [Depo. Ex. 27], a true and correct copy of which is attached hereto as **Exhibit C**.

14
15
16
17

      Judicial notice of facts #1 and #2 is requested to show the events that precipitated the County's change from a countywide election system to a district election system.  This is relevant to showing County Supervisors' concerns about re-election and their motivation to submit to the desires of constituents.

18
19
20

      Judicial notice of fact #3 is requested to show the approved expansion of Skylonda Lodge (aka the Stillpath property) in 1999.  This is relevant to showing existing permitted uses for the Stillpath property.

21
22

DATED:  January 13, 2017          DOWNEY BRAND LLP

23
24
25

By:_____*/s/  Anthony L. Vignolo*_____
          ANTHONY L. VIGNOLO
          Attorneys for Plaintiff
       STILLPATH RETREAT CENTER LLC

26
27
28

DOWNEY BRAND LLP

2

# Exhibit A



# 2008-2009 Grand Jury
**COUNTY OF SAN MATEO**
Hall of Justice
400 County Center
Redwood City, CA  94063-1655
(650) 599-1711; Fax (650) 363-4698

June 30, 2009

The Honorable Mark Church
President
San Mateo County Board of Supervisors
400 County Center
Redwood City, CA 94063-1655

Subject:  Grand Jury support for district elections for the San Mateo County Board of Supervisors

Dear Supervisor Church:

The 2008-2009 San Mateo County Civil Grand Jury understands that in 2010, a Charter Review Committee will be convened.  As a result of research and interviews, the Grand Jury has come to believe that district elections should replace the current system of countywide elections for the Board of Supervisors.  We are asking that the Charter Review Committee consider the following concerns. These are in addition to the Grand Jury's recommendations issued in the report titled "APPOINTMENT VS ELECTION:  How Should the Vacated Board of Supervisor Seats Be Filled?"

During its research, the Grand Jury found the following:

1)  San Mateo County is the only county in California to have countywide elections to elect its Board of Supervisors.
2)  Run-off elections for the Board of Supervisors have been required four times during the last 30 years.  Run-off elections occur when no candidate has received more than 50% of the vote in an initial election.
3)  During run-off elections for the Board of Supervisors, voter turnout has exceeded 70%.
4)  District elections are considered by the courts to be more representative (*Maria Esther Rey, Jesse Lopez, and Carlo Uranga v. Madera Unified School District, Madera County Board of Education, Madera Unified Governing Board of Trustees, and Rebecca Martinez*).  Sufficient demographics information was not available on a district basis in the County.
5)  During the last 40 years, only one supervisor was elected from the coastal area of the County.
6)  In charter counties, charters are changed by the electorate through a ballot initiative or by the Board of Supervisors.
7)  Many charter counties, such as Tehama and Orange Counties, easily changed their charters to deal with election issues.
8)  On two occasions, elected Supervisors did not win in the district in which they resided, both in June 1974 in District 2 and District 3.

The Grand Jury believes that:

1)  District elections may encourage competitive elections by:



EXHIBIT
87 - Tissier
Cea 2·11·16

      a. Lowering the cost barrier to entry for some candidates so that new candidates will consider running for election to the Board of Supervisors,

      b. Publicly airing and debating issues that cannot be effectively challenged without a competitive election,

      c. Encouraging a broad range of candidates with more local concerns, which in turn increases the interest in government by voters, and

      d. Providing the opportunity for a higher number of candidates to run due to the reduced cost of campaigning in a district rather than the entire county.

2) District elections may encourage more diverse candidates to run for election because outreach to a smaller number of constituents in a community is less of a barrier than reaching more than 700,000 residents countywide.

3) Public agencies should take into account *Maria Esther Rey, Jesse Lopez, and Carlo Uranga v. Madera Unified School District, Madera County Board of Education, Madera Unified Governing Board of Trustees, and Rebecca Martinez* when reviewing methods of elections.

4) The current charter is flawed because it allows supervisors to represent districts in which they have been rejected by the electorate.

5) District elections may open up opportunities for better representation in the rural, less populated areas of the County, since most campaigns are carried out in the densely-populated urban areas.

6) An instant run-off election or ranked election* could reduce cost to the County and the candidates because it would:

      a. make run-off elections unnecessary,

      b. potentially induce a wider variety of candidates to run, and

      c. increase voter interest because voters could vote for the candidate they favor without feeling like they are throwing away a vote.

On behalf of the 2008-2009 San Mateo County Civil Grand Jury, I appreciate your cooperation in forwarding this advisory letter to the Charter Review Committee for its consideration to amend the county charter to have the San Mateo County Board of Supervisors elected via district elections.

Respectfully submitted,

Virginia Chang Kiraly
Foreperson
2008-2009 San Mateo County Civil Grand Jury

cc:    Supvr. Rose Jacobs Gibson
        Supvr. Richard Gordon
        Supvr. Carole Groom
        Supvr. Adrienne Tissier
        David S. Boesch, County Manager
        Honorable George A. Miram
        Mike Murphy
        Brenda Carlson

*An instant run-off election is a system used for single-winner elections, in which voters rank candidates in order of preference. If no candidate is the first preference of a majority of voters, the candidate with the fewest number of first-preference rankings is eliminated, and that candidate's ballots are redistributed at full value to the remaining candidates according to the next ranking on each ballot. This process is repeated until one candidate obtains a majority of votes among candidates not eliminated.

# Exhibit B

927227.1

1 | LAWYERS' COMMITTEE FOR CIVIL RIGHTS
ROBERT RUBIN, SBN 85084
2 | RRubin@lccr.com
131 Steuart Street, Suite 400
3 | San Francisco, California 94105
Telephone: 415.543.9444
4 | Facsimile: 415.543.0296

5 | ARNOLD & PORTER LLP
BETH H. PARKER, SBN 104773
6 | Beth.Parker@aporter.com
JAMES A. FOX, SBN 207187
7 | Jim.Fox@aporter.com
MANAV KUMAR, SBN 266277
8 | Manav.Kumar@aporter.com
One Embarcadero Center
9 | 22nd Floor
San Francisco, CA 94111
10 | Telephone: 415.356.3000
Facsimile: 415.356.3099
11

12 | Attorneys for Plaintiffs

JOAQUIN G. AVILA, SBN 56484
avilaj@seattleu.edu
P.O. Box No. 33687
Seattle, Washington 98133
Telephone: 206.398.4117

ASIAN LAW CAUCUS
CHRISTOPHER PUNONGBAYAN, SBN 233239
chrisp@asianlawcaucus.org
55 Columbus Avenue
San Francisco, CA 94111
Telephone: 415.896.1701
Facsimile: 415.896.1702

**FILED**
**SAN MATEO COUNTY**

APR 1 4 2011

Clerk of the Superior Court

By _____
        DEPUTY CLERK

13

SUPERIOR COURT OF THE STATE OF CALIFORNIA

14

IN THE COUNTY OF SAN MATEO

15

16

**CIV 5 0 4 8 6 6**

17 | RAY SATORRE, BRADLEY ROXAS, JOSEPH OTAYDE, MARIO PANORINGAN, VIOLETA ORTEGA, and JOHANNA SANDOVAL,

18 |                           Plaintiffs,

19

20 |         v.

21 | SAN MATEO COUNTY BOARD OF SUPERVISORS and MARK CHURCH, in his capacity as San Mateo County Chief Elections Officer,

22

23 |                           Defendants.

24

CASE NO.:

**COMPLAINT FOR VIOLATION OF THE CALIFORNIA VOTING RIGHTS ACT OF 2001**

25

26

27

28

**EXHIBIT**
89 - Tissier
aca 2.11.16
PENGAD 800-631-6989

COMPLAINT FOR VIOLATION OF THE CALIFORNIA VOTING RIGHTS ACT OF 2001
WEST:30756481v4

1        Plaintiffs Bradley Roxas, Ray Satorre, Joseph Otayde, Mario Panoringan, Violeta Ortega, and

2   Johanna Sandoval ("Plaintiffs") allege as follows:

3

4                                    **INTRODUCTION**

5        1.      This action challenges the imposition of a discriminatory at-large election system that

6   is plagued by racially polarized voting. While fifty-seven (57) of California's fifty-eight (58)

7   counties apparently have recognized the unfairness of at-large elections, and no longer rely on them,

8   the County of San Mateo is alone in its insistence on maintaining a policy that results in vote dilution

9   of its Asian and Latino communities.

10      2.      Plaintiffs have been exceptionally patient in withholding litigation so long as some

11  possibility of voluntary compliance existed. But once the Board of Supervisors voted to reject a

12  commission's recommendation that the issue of at-large elections be put to a vote of County residents,

13  it became clear that only litigation would motivate the County to dispense with its discriminatory at-

14  large system.

15                                    **BACKGROUND**

16      3.      The at-large method of elections used to select San Mateo County's Board of

17  Supervisors violates the California Voting Rights Act of 2001. Because of the racially polarized

18  voting that has plagued recent elections within the County of San Mateo, this election system

19  unlawfully deprives Latino and Asian voters of the ability to voice their preferences meaningfully.

20  The law requires this Court to impose an alternative election system, such as a district-based system,

21  in which Latinos and Asians would be able to elect candidates of their choice or influence the

22  outcome of elections.

23      4.      As commonly recognized, at-large electoral systems, like the one in San Mateo

24  County, disempower non-majority voters where there is (1) a significant non-majority population of

25  voters routinely ignored and marginalized by the majority, and (2) racially polarized voting. Only

26  one county in California uses an at-large election system to elect its Board of Supervisors: San

27  Mateo. Every other county in the State elects its Board of Supervisors by district.

28

1

1     5.     The impact of at-large county Board of Supervisor elections on Latino and Asian
2 populations is revealed by the severe disparities caused by the at-large elections. Latinos make up
3 approximately 25% of the population in San Mateo County. Yet, since at least 1995, only one Latino
4 has occupied a seat on the San Mateo County Board of Supervisors. Similarly, Asians make up
5 approximately 25% of the population in San Mateo, but no Asian has held a single seat on the Board
6 of Supervisors since at least 1995.

7     6.     The California Voting Rights Act (the "Act") -- California Elections Code §§ 14025-
8 14032 -- was passed to remedy this kind of vote dilution. This Court is specifically authorized by
9 California Elections Code Section 14029 to implement any appropriate remedy that is tailored to
10 remedy a violation of the Act. Appropriate remedies may include a district-based method of election
11 -- including majority-minority, influence, and/or crossover districts; increasing the number of seats
12 on the Board; and combinations of the foregoing remedies.

13     7.     San Mateo County's at-large electoral system unlawfully dilutes the votes of Latinos
14 and Asians who live within the San Mateo County limits, and for years has precluded Latinos and
15 Asians from effectively participating in San Mateo County's governing body, the Board of
16 Supervisors. San Mateo's electorate votes in a racially polarized manner, with the numerical
17 superiority of the rest of the registered electorate consistently defeating the electoral preferences of
18 Latino and Asian voters. San Mateo County's at-large method of election, together with racially
19 polarized voting, impairs the ability of Latino and Asian citizens to elect candidates of their choice or
20 to influence the outcome of elections of the Board of Supervisors.

21     8.     As members of a protected class of Asian and Latino residents of San Mateo County
22 impacted by the County's at-large election system, the Plaintiffs bring this action to enjoin the
23 continued abridgment of Latino and Asian voting rights. Specifically, Plaintiffs seek a judgment
24 from this Court that the at-large method of election currently in place violates the Act. Plaintiffs also
25 seek preliminary and permanent injunctive relief (1) enjoining Defendants from further imposing or
26 applying the current at-large method of election and (2) requiring Defendants to design and
27 implement, under this Court's supervision, a new system of elections -- such as a district-based
28 system -- appropriate to remedy Defendants' violation of the Act.

2

1

## JURISDICTION AND VENUE

2    9.    All parties are within the unlimited jurisdiction of this Court.

3    10.    Venue in this Court is proper because this is an action against agencies of San Mateo
4  County. Cal. Code Civ. Proc. § 394. Venue is also proper in this Court because all Defendants are
5  situated in the County of San Mateo, and the injuries suffered by Plaintiffs have occurred, and unless
6  enjoined, will continue to occur, in the County of San Mateo. Cal. Code Civ. Proc. § 395.

7

## PARTIES

8    11.    Plaintiff Ray Satorre resides within San Mateo County. He is Asian and a member of
9  a protected class of voters under the Act. He is over the age of 18 and is eligible to vote in elections
10  for the San Mateo County Board of Supervisors.

11    12.    Plaintiff Bradley Roxas resides within San Mateo County. He is Asian and a member
12  of a protected class of voters under the Act. He is over the age of 18 and is eligible to vote in
13  elections for the San Mateo Board of Supervisors.

14    13.    Plaintiff Johanna Sandoval resides within San Mateo County. She is Latina and a
15  member of a protected class of voters under the Act. She is over the age of 18 and is eligible to vote
16  in elections for the San Mateo County Board of Supervisors.

17    14.    Plaintiff Joseph Otayde resides within San Mateo County. He is Asian and a member
18  of a protected class of voters under the Act. He is over the age of 18 and is eligible to vote in
19  elections for the San Mateo County Board of Supervisors.

20    15.    Plaintiff Mario C. Panoringan resides within San Mateo County. He is Asian and a
21  member of a protected class of voters under the Act. He is over the age of 18 and is eligible to vote
22  in elections for the San Mateo County Board of Supervisors.

23    16.    Plaintiff Violeta Ortega resides in San Mateo County. She is Latina and a member of
24  a protected class of voters under the Act. She is over the age of 18 and is eligible to vote in elections
25  for the San Mateo County Board of Supervisors.

26    17.    Defendant San Mateo County Board of Supervisors (the "Board") is situated in San
27  Mateo County and is the legislative body for the County of San Mateo.

28

3

1      18.    Defendant Mark Church is the Chief Elections Officer of San Mateo County. Among

2  other duties, he is responsible for voter registration and the administration of all public elections

3  within the County. He is sued in his official capacity only.

4              **DIVERSITY AND LATINO AND ASIAN POPULATIONS IN SAN MATEO COUNTY**

5      19.    San Mateo County has a very diverse population. The majority of San Mateo

6  County's nearly 720,000 residents belong to a variety of racial and ethnic minority groups, and no

7  ethnic or racial group constitutes a majority of the population.

8      20.    The Latino and Asian populations in San Mateo County have increased dramatically

9  over the past thirty years. In 1980, White, Asian, and Latino residents formed 70.8%, 9.6%, and

10  12.5% of the County's population, respectively. Twenty years later, in 2000, the White portion of the

11  total population had decreased to 49.8%, while the Asian and Latino portions of the total population

12  had increased to 19.8% and 21.9%, respectively. By 2010, the County's proportions of Asian and

13  Latino populations both increased to form 24.8% and 25.4% of the population, respectively. In 2010,

14  the County's White residents accounted for approximately 43.4% of the County's population. In

15  certain cities within the County, Latinos make up as much as 59% of the population. Similarly, the

16  population in some cities within San Mateo County is up to 55% Asian.

17      21.    Latinos and Asians now make up a significant percentage of the voting age population

18  in San Mateo County. In 2009, Latinos formed approximately 21.4% of San Mateo County's voting

19  age population, and Asians made up 25.6% of the voting age population.

20      22.    San Mateo County's population is generally concentrated in the area north of Highway

21  92, an area that shows particular diversity. In this northern region, the largest cities -- Daly City, San

22  Mateo, and South San Francisco -- all have significant populations of both Asians and Latinos. In

23  Daly City, for example, over half of the population is Asian and nearly one quarter of the population

24  is Latino. Similarly, in South San Francisco, Asians and Latinos each comprise approximately one

25  third of the population. The southern region of the County, on the other hand, shows less diversity.

26  In San Mateo County, the cities with the highest concentrations of White residents are located in the

27  southern half of the County, and approximately 72% of the total population there is White.

28

4

1    23.    Similarly, the city councils in cities in the northern half of the County are more

2 ethnically diverse than city councils in the southern cities. There are currently four Asian-surnamed

3 city council members and ten Spanish-surnamed city council members in cities in the northern half of

4 the County. By contrast, there are only two Asian- and three Spanish-surnamed city council

5 members in southern cities.

## SAN MATEO COUNTY'S AT-LARGE METHOD OF ELECTIONS

7    24.    The San Mateo County Board of Supervisors consists of five members, each of whom

8 has a term of four years. Supervisors' terms are staggered so that every two years either two or three

9 supervisors are elected.

10    25.    San Mateo County's Board of Supervisors elections are governed by the County

11 Charter. Article II, Section 202 of the San Mateo County Charter states that "supervisors are elected

12 at large." While candidates are required to reside within the specific district that corresponds to their

13 seat, each supervisor is elected by voters of the entire County. Section 14026(a)(2) of the Act defines

14 this type of an election -- where candidates are required to reside within given areas of the

15 jurisdiction, but voters of the entire jurisdiction elect members to the governing body -- as an at-large

16 election.

## EFFECT OF AT-LARGE ELECTIONS ON LATINOS AND ASIANS IN SAN MATEO COUNTY

26.    Latino and Asian voters within San Mateo County, including Plaintiffs, constitute a

protected class of voters who are members of a race, color, or language minority group, as referenced

and defined in the federal Voting Rights Act. Cal. Elec. Code § 14026(d).

27.    San Mateo County's at-large electoral system impairs the ability of Latino and Asian

voters to elect candidates of their choice to the Board of Supervisors, or to influence the outcome of

elections. The at-large method of election, together with a racially polarized electorate, has for years

diluted and abridged the voting rights of Latinos and Asians within San Mateo County.

28.    None of the current Board members are Latino or Asian. In the past 15 years, just one

Latino has occupied a seat on the Board of Supervisors, and no Asian has occupied a seat during that

time.

5

1

## RACIALLY POLARIZED VOTING IN PAST ELECTIONS

2      29.     Plaintiffs are informed and believe and on that basis allege that an analysis of elections
3   involving Latino and Asian candidates and relevant ballot propositions within the boundaries of San
4   Mateo County will demonstrate a clear and consistent pattern of racially polarized voting between
5   Latino and non-Latino voters, and also between Asian and non-Asian voters.

6      30.     In the context of at-large elections, this racially polarized voting creates the
7   paradigmatic violation contemplated by the Act: there is a difference in the choice of candidates or
8   other electoral choices that are preferred by Latino and Asian voters and in the choice of candidates
9   or electoral choices that are preferred by voters in the rest of the electorate. Members of the Latino
10  and Asian populations tend to vote similarly to one another, while also voting differently from the
11  rest of San Mateo voters.

12     31.     As a result of this racially polarized voting, non-Latino and non-Asian voters have
13  dictated the outcome of every at-large Board of Supervisors election in San Mateo County for at least
14  the past 15 years, and Latino and Asian voters have been unable to influence election results.

15     32.     Without limitation, instances of racially polarized voting in San Mateo County include
16  the following:

17     33.     **State Insurance Commissioner Election (1998).** In 1998, Democrat Diane Martinez
18  ran for state Insurance Commissioner against Republican Chuck Quackenbush. Racially polarized
19  voting occurred in San Mateo County in this election. In the heavily Democratic County, Martinez
20  failed to win a majority of the non-Latino vote, despite winning an estimated 89% of the Latino vote.

21     34.     **Democratic Primary Election for Insurance Commissioner (2002).** In the 2002
22  Democratic primary election for state Insurance Commissioner, racially polarized voting occurred in
23  San Mateo County. Thomas Calderon earned the most votes from Latinos, winning an estimated
24  49% of the Latino vote compared to 30% and 21% for his opponents, John Garamendi and Tom
25  Umberg, respectively. Among non-Latinos, however, Calderon was nearly shut-out, winning only an
26  estimated 3.5% of the vote. Almost all of the non-Latino votes went to Calderon's White opponents.

27     35.     **Gubernatorial Recall Election (2003).** Racially polarized voting occurred in the
28  2003 gubernatorial recall election. Despite the Democratic majority in San Mateo County, only

6

1  44.5% of voters in San Mateo County voted for Democrat Cruz Bustamante. While an estimated

2  91% of Latinos voted for Bustamante, only 33% of non-Latino voters preferred the Latino candidate,

3  and he was defeated by Republican Arnold Schwarzenegger.

4      36.    **Democratic Primary Election for Secretary of State (2006)**. Two women ran for

5  Secretary of State in the 2006 Democratic primary, one of whom was Latina. Racially polarized

6  voting occurred in this election in San Mateo County. While an estimated 64% of Latinos voted for

7  Latina Deborah Ortiz, only 13% of non-Latinos voted for Ortiz. She was defeated by her White

8  opponent, Debra Bowen.

9      37.    **Democratic Primary Election for State Controller (2006).** In the 2006 Democratic

10  primary, Asian candidate John Chiang narrowly defeated his opponent, Joe Dunn. Racially polarized

11  voting occurred in San Mateo County in this election. In the primary election, Asians demonstrated

12  35 points higher support for Chiang than did non-Asians. In the general election Asians voted over

13  70% for Chiang compared to only 50% for non-Asians. While Chiang won the primary statewide

14  and later won the general election, he was defeated in San Mateo County.

15      38.    **Democratic Primary Election for State Insurance Commissioner (2010)**. In the

16  2010 Democratic primary for California Insurance Commissioner, Dave Jones defeated Latino

17  Hector De La Torre. Racially polarized voting occurred in this election in San Mateo County. De La

18  Torre was the first choice candidate among Latinos in San Mateo County and earned 51% of their

19  vote, but still suffered massive defeat because 90% of non-Latino voters in San Mateo County gave

20  their vote to Dave Jones.

21      39.    **Democratic Primary Election for Attorney General (2010).** In the 2010

22  Democratic primary for California Attorney General, Asian candidate Ted Lieu ran in a crowded and

23  competitive field of six Democratic candidates. Lieu ran strong among Asian voters in San Mateo

24  County, but won almost no votes at all among non-Asian voters.

25      40.    **General Election (2010).** John Chiang, a popular incumbent for State Controller,

26  easily won re-election, however his election still demonstrated racial block voting. Among Asians in

27  San Mateo County, Chiang won an estimated 90% of the vote, compared to 58% among non-Asians.

28

## THE DISENFRANCHISEMENT AND VOTE DILUTION OF LATINO AND ASIAN VOTERS

41.     The at-large method of election and racial polarization described above have repeatedly caused Latino and Asian vote dilution in San Mateo County. In elections where Latino and/or Asian voters express choices on candidates or initiatives different from those of other voters, voters in the rest of the electorate, by virtue of their overall numerical superiority, regularly defeat the preferred choices of Latino and/or Asian voters.

42.     Even when a majority of Latino or Asian voters supports one candidate or issue, vote dilution caused by the at-large method of election prevents Latino and Asian votes from being aggregated in a manner that would successfully lead to the victory of the Latino- and/or Asian-preferred candidate or issue. The above elections plainly show how the collective will of Latino and Asian voters is defeated in San Mateo County.

43.     The obstacle posed by San Mateo County's at-large method of electing the Board of Supervisors, together with racially polarized voting, explains why Latino and Asian citizens cannot, and will not, have a meaningful impact on the composition of the Board. In an alternative election system, such as a district-based system, Latinos and Asians would be able to elect or influence the outcome of the election of at least two members (one Latino, one Asian) of the Board of Supervisors.

44.     San Mateo County and the Board of Supervisors have been advised that the at-large method of election violates the Act. Despite this, the Board has rejected calls to convert to a true district-based system and several Board members have publicly commented that the existing method of election -- which they have been advised is illegal -- best serves the population of San Mateo County. Previous attempts to change the method of election for the Board through the political process, including ballot initiatives in 1978 and 1980, have failed.

45.     Defendants have refused to take steps to ensure that their elections conform with the mandates of the Act.

/ / /

/ / /

/ / /

# FIRST CAUSE OF ACTION

**(By All Plaintiffs Against All Defendants for Violation of the California Voting Rights Act of 2001, Cal. Elec. Code § 14025 et seq.)**

46.     Plaintiffs refer to and incorporate paragraphs 1 to 45 as though fully set forth herein.

47.     Defendants employ an at-large method of election, as that term is defined in California Elections Code Section 14026(a), for elections of the Board of Supervisors of San Mateo County, whereby all voters within the jurisdiction together elect all members to the Board of Supervisors.

48.     Racially polarized voting has occurred, and continues to occur, in elections for members of the Board of Supervisors and in elections incorporating other electoral choices by San Mateo County voters.

49.     The at-large method of election for the Board of Supervisors is imposed and applied by Defendants in a manner that impairs the ability of Asian and Latino voters to elect candidates of their choice or to influence the outcome of elections, as a result of the dilution and abridgement of their rights described above.

50.     Defendants, collectively and individually, are responsible for imposing, applying, maintaining, and/or failing to take any steps to prevent the at-large system of elections for the Board of Supervisors.

51.     An actual controversy has arisen and now exists between the parties relating to the legal rights and duties of all Plaintiffs and Defendants for which all Plaintiffs desire a declaration of rights.

52.     Defendants' wrongful conduct has caused, is causing, and unless enjoined by this Court, will continue to cause irreparable injury to Plaintiffs.

53.     Plaintiffs have no adequate remedy at law for the injuries they currently suffer and will otherwise continue to suffer.

/ / /

/ / /

/ / /

/ / /

9

1

## SECOND CAUSE OF ACTION

2

3

**(By Plaintiffs Bradley Roxas, Ray Satorre, Joseph Otayde and Mario Panoringan
Against All Defendants For Violation of the California Voting Rights
Act of 2001, Cal. Elec. Code § 14025 et seq.)**

4

5

54.     Plaintiffs Bradley Roxas, Ray Satorre, Joseph Otayde and Mario Panoringan refer to
and incorporate paragraphs 1 to 53 as though fully set forth herein.

6

7

8

55.     Defendants employ an at-large method of election, as that term is defined in California
Elections Code Section 14026(a), for elections of the Board of Supervisors of San Mateo County,
whereby all voters within the jurisdiction together elect all members to the Board of Supervisors.

9

10

11

56.     Racially polarized voting has occurred, and continues to occur, in elections for
members of the Board of Supervisors and in elections incorporating other electoral choices by San
Mateo County voters.

12

13

14

15

57.     The at-large method of election for the Board of Supervisors is imposed and applied
by Defendants in a manner that impairs the ability of Asian voters to elect candidates of their choice
or to influence the outcome of elections, as a result of the dilution and abridgement of their rights
described above.

16

17

18

58.     Defendants, collectively and individually, are responsible for imposing, applying,
maintaining, and/or failing to take any steps to prevent the at-large system of elections for the Board
of Supervisors.

19

20

59.     An actual controversy has arisen and now exists between the parties relating to the
legal rights and duties of Plaintiffs and Defendants for which Plaintiffs desire a declaration of rights.

21

22

60.     Defendants' wrongful conduct has caused, is causing, and unless enjoined by this
Court, will continue to cause irreparable injury to Plaintiffs.

23

24

61.     Plaintiffs have no adequate remedy at law for the injuries they currently suffer and
will otherwise continue to suffer.

25

///

26

///

27

///

28

10

## THIRD CAUSE OF ACTION

**(By Plaintiffs Violeta Ortega and Johanna Sandoval Against All Defendants For Violation of the California Voting Rights Act of 2001, Cal. Elec. Code § 14025 et seq.)**

62.    Plaintiffs Violeta Ortega and Johanna Sandoval refer to and incorporate paragraphs 1 to 61 as though fully set forth herein.

63.    Defendants employ an at-large method of election, as that term is defined in California Elections Code Section 14026(a), for elections of the Board of Supervisors of San Mateo County, whereby all voters within the jurisdiction together elect all members to the Board of Supervisors.

64.    Racially polarized voting has occurred, and continues to occur, in elections for members of the Board of Supervisors and in elections incorporating other electoral choices by San Mateo County voters.

65.    The at-large method of election for the Board of Supervisors is imposed and applied by Defendants in a manner that impairs the ability of Latino voters to elect candidates of their choice or to influence the outcome of elections, as a result of the dilution and abridgement of their rights described above.

66.    Defendants, collectively and individually, are responsible for imposing, applying, maintaining, and/or failing to take any steps to prevent the at-large system of elections for the Board of Supervisors.

67.    An actual controversy has arisen and now exists between the parties relating to the legal rights and duties of Plaintiffs and Defendants for which Plaintiffs desire a declaration of rights.

68.    Defendants' wrongful conduct has caused, is causing, and unless enjoined by this Court, will continue to cause irreparable injury to Plaintiffs.

69.    Plaintiffs have no adequate remedy at law for the injuries they currently suffer and will otherwise continue to suffer.

## PRAYER FOR RELIEF

Wherefore, Plaintiffs ask this Court to:

1.    Declare that the current at-large method of election used to elect members of the San Mateo County Board of Supervisors violates the California Voting Rights Act of 2001;

11

1    2.    Grant preliminary and permanent injunctive relief enjoining the future use of an at-

2    large method of election to elect members of the San Mateo County Board of Supervisors;

3    3.    Following a full evidentiary hearing, and under the Court's supervision, mandate a

4    new system of elections that complies with the Act, and which is tailored to remedy Defendants'

5    violation of the Act;

6    4.    Order Defendants to pay Plaintiffs' attorneys' fees, litigation expenses -- including, but

7    not limited to, expert witness fees and expenses as part of the costs -- and prejudgment interest

8    pursuant to California Elections Code Section 14030 and other applicable law; and

9    5.    Grant Plaintiffs such further relief as the Court deems just and proper.

10   DATED: April 14, 2011

11                              ARNOLD & PORTER LLP

12

13                          By: _____

14                                    Beth H. Parker

15                          Attorneys for Plaintiffs
                            Ray Satorre, Bradley Roxas, Joseph Otayde, Mario
16                          Panoringan, Violeta Ortega, and Johanna Sandoval

17

18

19

20

21

22

23

24

25

26

27

28

                                        12

# Exhibit C

927227.1



| | | |
|---|---|---|
| **San Mateo County Board of Supervisors** | **Board Members** | **County Manager/** |
| | Richard S. Gordon | **Clerk of the Board** |
| | Mary Griffin | John Maltbie |
| | Jerry Hill | |
| | Rose Jacobs Gibson | **County Counsel** |
| | Michael D. Nevin | Tom Casey |

Hall of Justice and Records • 400 County Center • Redwood City • California 94063 • 650-363-4653 • Fax 650-599-1027

https://www.co.sanmateo.ca.us

> PLEASE NOTE THERE WILL BE NO MEETING OF THE
> BOARD OF SUPERVISORS ON MAY 11 AND 25, 1999

*A COPY OF THE BOARD OF SUPERVISOR'S AGENDA PACKET IS AVAILABLE FOR REVIEW AT THE LAW LIBRARY, 710 HAMILTON STREET @ MARSHALL STREET, ACROSS FROM THE HALL OF JUSTICE AND RECORDS. THE LIBRARY IS OPEN MONDAY THRU THURSDAY 8 A.M. - 9 P.M., FRIDAY 8 A.M. - 5 P.M., AND SATURDAY AND SUNDAY 12 P.M. - 4 P.M.*

*If you wish to speak to the Board, please fill out a speakers slip located on the table near the door. If you have anything that you wish distributed to the Board and included in the official record, please hand it to the Clerk of the Board who will distribute the information to the Board members and staff.*

Tuesday, April 27, 1999

**PLEDGE OF ALLEGIANCE**

**ROLL CALL**

1.  8:15 a.m.  CLOSED SESSION

        1) Conference with County Counsel - Existing Litigation

        Horan vs. County of San Mateo
        WCAB No. SM947112

        2) Conference with Labor Negotiator
        Agency Negotiator:      Keith Fleming
        Employee Organization:   Law Enforcement

2.  9:00 a.m.  REGULAR AGENDA
                CONSENT AGENDA

    *All items on the consent agenda are approved by one roll call motion unless a request is made at the beginning of the meeting that an item be withdrawn or transferred to the regular agenda. Any item on the regular agenda may be transferred to the consent agenda.*

3.  9:00 a.m.  Presentation of the "Employee of the Month Award" to Elizabeth Schulz, Senior Public Health Nurse, Health Services Agency (County Manager)

4.  ORAL COMMUNICATIONS

    *If you wish to address the Board, please complete a speaker slip and put it in the box on the railing near the Clerk. If your subject is not on the agenda, the President will recognize you at this time. **Speakers are customarily limited to two minutes**.*

PENGAD 800-631-6989

EXHIBIT

27-Schaller

area 1-19-16

**MATTERS SET FOR SPECIFIED TIME**

*Times listed under this section are approximate. The Board makes every effort to adhere to the times listed, but in some cases, because of unexpected presentations, items may not be heard precisely at the time scheduled. In no case will any item be heard before the time it is scheduled.*

5.    9:00 a.m.    Presentation by Jack Olsen on his trip to the Ukraine (Supervisor Gordon)

6.    9:30 a.m.    Hearing to consider an appeal of the Planning Commission's approval of a Use Permit amendment, Resource Management Permit, and exemption from Architectural Review to construct four separate lodging structures to house 16 guest cottages in four structures for a total of 32 lodging rooms, and expansion of the septic system and drainfield, and an expansion of the parking lot for a total of 30 spaces, including 10 tandem parking spaces, at the existing Skylonda Lodge in the unincorporated County area near Woodside. The project is located at 16350 Skyline Boulevard, Woodside (Applicant: Skylonda Fitness Center) (Appellants: Terry and Peggy Bogart) (Environmental Services Agency Director):

                     1) Report and recommendations

                     2) Close hearing

                     3) Approve or deny appeal

7.    10:15 a.m.    Presentation on the Meals on Wheels Program (Health Services Agency Director)

8.    10:30 a.m.    Request adoption of the 1999-2001 County of San Mateo Equal Employment Opportunity Plan (Employee and Public Services Director)

9.    1:30 p.m.    Receipt of bids for the Hall of Justice Elevator Control System Replacement project (Public Works)


## REGULAR AGENDA

### CHIEF INFORMATION OFFICER

10.    1) Resolution authorizing the Director of Information Services to execute amended Master Purchase Agreement with Williams Communications for provision of telephone equipment services, increasing the amount of the contract by $1,100,000 to $3,100,000 for Phase II of the County Telephone Upgrade project

       2) Resolution authorizing transfer of $300,000 from department reserves to fixed assets to begin Phase II telephone work in the new office building (4/5ths vote required)

       3) Request authorization to consolidate financing Phase II of the County Telephone Upgrade project with that of the Radio System Upgrade in 1999-2000 from June 30, 1999 through June 30, 2002


### SHERIFF

11.    Resolution authorizing agreement with Turbo Data Systems, Inc. for provision of citation processing and adjudication of County agency-issued parking citations

**COUNTY MANAGER**

12.    County Manager's report

1) Resolution calling for a State Audit of Gasoline Producers in California (continued from April 20, 1999)

2) Resolution in support of Federal Reimbursement of State Prisoner Costs

3) Resolution in support of AB 195 (Wright) Reimbursement of State Prisoner Costs

4) Resolution in support of AB 1303 (Thomson) Local Control of Probation Officer

5) Resolution in support of AB 1319 (Hertzberg) Forensic Lab Fund

6) Resolution in support of SB 15 (Polanco) Establishing Safety Standards for Handguns

7) Resolution in support of SB 763 (Sher) Public Defender Immunity

8) Resolution in support of AB 1036 (Wesson) Increase and Repeal Sunset of Property Tax Administration Program

**BOARD OF SUPERVISORS**

13.    Request direction for appropriate County staff to work on census count verification through the use of water meter information (Supervisor Jacobs Gibson)

14.    Board members' committee reports

# CONSENT AGENDA

*All items on the consent agenda are approved by one roll call motion unless a request is made at the beginning of the meeting that an item be withdrawn or transferred to the regular agenda. Any item on the regular agenda may be transferred to the consent agenda.*

**BOARD OF SUPERVISORS**

15.    Recommendation for appointment of William J. Kennedy to the Planning Commission representing the Fifth District to a term expiring January 2001 (Supervisor Nevin)

16.    Proclamation designating May 1-8, 1999 as "SAFE KIDS Week" (Supervisor Griffin)

**CHIEF INFORMATION OFFICER**

17.    Resolution authorizing the purchasing agent to issue a purchase order for network equipment in an amount not to exceed $292,000, waiving competitive bidding and authorizing the purchasing agent to enter into agreement with Cisco Systems, Inc. for future purchase of data network routers and related network equipment

**COUNTY MANAGER**

18.    Resolution declaring intention to sell an unimproved property located in the City of East Palo Alto that is surplus to County needs and authorizing the County Manager's Office to commence the sale process

19.    Resolution declaring intention to sell an unimproved property located in Pescadero that is surplus to County needs and authorizing the County Manager's Office to commence the sale process

20.    Request adoption of a Policy relating to County Reserves

## EMPLOYEE AND PUBLIC SERVICES DIRECTOR

21.    Adoption of ordinance amending the salary ordinance to add one position in the Personnel Services Division of Employee and Public Services, previously introduced, and waiver of reading the ordinance in its entirety

22.    Report recommending denial of the following claims (non-culpable):

Rod Abeyta          Dennis Lee Nelson
Suzanne Martella    Yao Wei Yu
Mike McVay

## ENVIRONMENTAL SERVICES AGENCY DIRECTOR

23.    Resolution approving plans and specifications calling for sealed proposals for the Huddart Park Parking Lot Renovation project

(May 18, 1999 at 1:30 p.m.)

## HEALTH SERVICES AGENCY DIRECTOR

24.    Resolution authorizing the purchasing agent to enter into agreement with Siemens Medical Systems for provision of maintenance services for the Siemens Medical Systems nuclear gamma camera located in the Diagnostic and Imaging Department of the San Mateo County Health Center from February 20, 1999 through February 19, 2004 in an amount not to exceed $109,610

25.    Resolution authorizing amended agreement with Medical Associates of San Mateo County, Inc. for provision of specialty services by physicians for the Hospital and Clinics Division and authorizing the Controller to be the dispersing agent, increasing the amount of the contract by $228,752 to $45,855,856 (no net County cost)

26.    Resolution superseding Resolution Number 62045 and authorizing the Controller to continue to make payments to non-contract physicians from April 1, 1998 through March 31, 1999

## HUMAN SERVICES AGENCY DIRECTOR

27.    Resolution authorizing the Human Services Agency to be the designated agency responsible for administering the Child Abuse Prevention, Intervention and Treatment (CAPIT) and the Community Based Family Resource and Support (CBFRS) Program funds and authorizing the Human Services Agency Director or her designee to submit a plan to the State Department of Social Services for the use of the funds

28.    1) Introduction of ordinance amending the salary ordinance adding six new positions in Children and Family Services, and waiver of reading the ordinance in its entirety

2) Request direction for the Human Services Agency Director to negotiate an agreement with the County Office of Education for provision of educational case management services to children in shelter care and foster care

## PUBLIC WORKS DIRECTOR

29.    Resolution awarding contract to TT Construction and Engineering, Inc. for a new storage building at the Grant Corporation Yard, Redwood City, in an amount not to exceed $210,000

30.    Introduction of ordinance reducing the speed limit on a 2.4 mile portion of Purisima Creek Road, Half Moon Bay area, to 35 miles per hour, and waiver of reading the ordinance in its entirety

31.    Introduction of ordinance establishing twenty minute limited parking zones on a portion of Warrington Avenue, Redwood City area, and waiver of reading the ordinance in its entirety

County Home Page | Board of Supervisors

[ County Home Page | Board of Supervisors ]